UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

v.

ANTHONY ALLEN,
PAUL THOMPSON,
TETSUYA MOTOMURA, and
ANTHONY CONTI,

     Defendants.

Case No. S4 14-CR-272 (JSR)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO COMPEL THE GOVERNMENT TO PRODUCE DOCUMENTS

| **WILLKIE FARR & GALLAGHER LLP** | **TOR EKELAND, P.C.** |
|---|---|
| Michael S. Schachter | Tor Ekeland |
| Casey E. Donnelly | Aaron Williamson |
| 787 Seventh Avenue | 195 Plymouth Street, 5th Floor |
| New York, New York 10019 | Brooklyn, New York 11201-1133 |
| (212) 728-8000 | (718) 737-7264 |
| *Attorneys for Defendant Anthony Allen* | *Attorneys for Defendant Anthony Conti* |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY..........................................................................................................2

LEGAL STANDARD...................................................................................................................4

ARGUMENT.................................................................................................................................5

    I.    THE MILBANK DOCUMENTS ARE MATERIAL TO THE DEFENSE. .....................5

    II.   THE GOVERNMENT HAS NO LEGITIMATE BASIS FOR WITHHOLDING
        THE MILBANK DOCUMENTS....................................................................................7

CONCLUSION..............................................................................................................................9

## TABLE OF AUTHORITIES

**Case**                                                                                               **Page(s)**

*Alpex Computer Corp. v. Nintendo Co.*,
  No. 86 CIV. 1749, 1994 WL 330381 (S.D.N.Y. July 11, 1994) ...........................................8

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987)..................................................................................................9

*United States v. Aref*,
  533 F.3d 72 (2d Cir. 2008)..................................................................................................5

*United States v. El-Hanafi*,
  No. S5 10 CR 162 (KMW), 2012 WL 603649 (S.D.N.Y. Feb. 24, 2012) ......................5, 7

*United States v. Lloyd*,
  992 F.2d 348 (D.C. Cir. 1993)............................................................................................4

*United States v. Payden*,
  613 F. Supp. 800 (S.D.N.Y. 1985) .....................................................................................4

*United States v. Reddy*,
  190 F. Supp. 2d 558 (S.D.N.Y. 2002).............................................................................7, 8

*United States v. Stein*,
  488 F. Supp. 2d 350 (S.D.N.Y. 2007).............................................................................4, 5

*United States v. Stevens*,
  985 F.2d 1175 (2d Cir. 1993).......................................................................................4, 5, 7

**Rules**

Fed. R. Crim. P. 16(a)(1)(E) ......................................................................................................4

Fed. R. Evid. 408 .......................................................................................................................8

Fed. R. Evid. 410 .......................................................................................................................8

Defendants Anthony Allen and Anthony Conti respectfully submit this memorandum of law in support of their motion to compel the Government to produce certain documents that it has improperly withheld from the Defendants.

## PRELIMINARY STATEMENT

Rule 16 of the Federal Rules of Criminal Procedure mandates that the Government produce to Defendants Anthony Allen and Anthony Conti *all* documents material to their defense. The Government, however, has resisted producing certain material documents authored by Milbank, Tweed, Hadley & McCloy (the "Milbank Documents"),[1] who represented Coöperatieve Centrale Raiffeisen-Borenleenbank B.A. ("Rabobank") during the Government's investigation into alleged manipulation by Rabobank of the London InterBank Offered Rate ("LIBOR"). The Milbank Documents include a number of white papers and related advocacy pieces which argue that Rabobank's employees did not manipulate LIBOR and had no intention of manipulating LIBOR. The Government has produced some of Milbank's submissions to the Defendants, but is withholding others.

The Government claims it does not have to produce the Milbank Documents because they are settlement communications. This is not a proper basis to withhold documents. Rule 16 governs discovery in a criminal case, and mandates broad disclosure to the defendant of all material evidence. In the Second Circuit, materiality is defined as *all* evidence that could either counter the prosecution's case or bolster a defense. The Milbank Documents, which address head-on the Government's principal allegations in the Superseding Indictment—that the Defendants conspired to make improper LIBOR submissions for the benefit of Rabobank's derivatives traders—fall squarely within Rule 16 and the Second Circuit's definition of

---

[1] A list of the Milbank Documents sought by the Defendants is attached as Exhibit 1.

1

materiality. Indeed, the Government has previously disclosed, pursuant to Rule 16, other white papers authored by Milbank which contain analysis and arguments almost identical to those included in the withheld documents.

In its refusal to produce the Milbank Documents, the Government confuses the issue of admissibility—whether something may be entered into evidence at trial—with that of discoverability—whether something should be produced to a defendant prior to trial. Indeed, questions regarding the *admissibility* of the Milbank Documents at trial—should they ever, in fact, arise—have no bearing whatsoever on the documents' *discoverability* under Rule 16. Furthermore, any privilege that might have arguably attached to the Milbank Documents and precluded their disclosure to the Defendants has long since been waived by Rabobank's submission of the documents to the Government and the Government's own prior disclosures to the Defendants.

Accordingly, Mr. Allen and Mr. Conti respectfully ask this Court to compel the Government to produce the Milbank Documents.

## PROCEDURAL HISTORY[2]

On March 20, 2015, the Government made its first production of documents to the Defendants but explained that the Milbank Documents were being "properly withheld" as "settlement materials," pursuant to Federal Rules of Evidence 408 and 410. (Ex. 2 (March 20, 2015 Ltr. from Department of Justice) at 2.) On March 26, 2015, defense counsel participated in a telephone conference with the Government and requested that the Government produce the Milbank Documents. Defense counsel explained that the Government's discovery obligations

---

[2] Defendants' Memorandum of Law in support of its Motion to Immunize Submitter-R1, dated July 17, 2015, includes a basic description of the Government's allegations against the Defendants and general background information about the case. *See* Def. Mot. to Compel the Government to Immunize Submitter-R1, July 17, 2015, ECF No. 74.

are dictated not by the Federal Rules of Evidence—which pertain only to the admissibility of evidence at trial—but rather, by the broad disclosure provisions of Rule 16.

In response, the Government offered a new rationale for its refusal to produce the Milbank Documents, claiming that they were being withheld as Milbank's privileged "work-product." Counsel for the Defendants then pointed out that any work-product privilege which might have attached to the Milbank Documents had long been waived by Rabobank's voluntary submission of the documents to the Government. On April 6, 2015, the Government reluctantly agreed that it would contact Rabobank to obtain permission to produce "any settlement presentations or white papers that Rabobank provided to DOJ" to the Defendants. (Ex. 3 (April 6, 2015 Ltr. from Department of Justice) at 4.) The Defendants were never informed of Rabobank's response.

During a telephone call on April 17, 2015, the Government tried out yet another justification for its failure to produce material evidence. The Government argued that the Milbank Documents included analyses of data which was otherwise in the Defendants' possession. The Government explained that, in its view, Defendants are not entitled to documents which contain conclusions that the Defendants could theoretically develop on their own. The Government argued that it had already produced spreadsheets detailing Rabobank's derivatives trading, money market trading, and LIBOR submissions and that the Defendants were therefore capable of conducting the same analyses described in the Milbank Documents. Counsel for the Defendants expressed their disagreement with the Government's position and once again reminded the Government of the broad disclosure mandated by Rule 16.

On June 3, 2015, the Government sent Defendants a letter summarizing the contents of the Milbank Documents and stating that it "[had] reviewed the documents that [it is]

3

presently withholding and [had] determined that they are not discoverable." (Ex. 4 (June 3, 2015 Ltr. from Department of Justice) at 1.) The Government gave no further explanation of its basis for withholding the Milbank Documents.

Because the Government had changed its explanation for why it was withholding the Milbank Documents no less than three times in as many months, defense counsel asked the Government to describe its position in writing. (Ex. 5 (June 11, 2015 Ltr. to Department of Justice) at 1-2.) Several weeks later, the Government responded by email and claimed, "Rule 16 does not require the production of such settlement communications," and cited *United States v. Reddy*, 190 F. Supp. 2d 558, 572 (S.D.N.Y. 2002) as authority for that proposition. (Ex. 6 (June 29, 2015 email from Department of Justice).)

## LEGAL STANDARD

Rule 16 requires that "[u]pon a defendant's request" the prosecution must disclose to the defendant "papers, documents, data . . . or copies or portions of any of these items," if the item is in the prosecution's possession and "the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The Second Circuit has adopted a broad definition of materiality for discovery in criminal cases, holding that evidence "is material if it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). Indeed, evidence is considered material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (citing *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations marks and citations omitted)). Although the prosecution certainly "has an obligation to produce all exculpatory material" to the defense, *United States v. Payden*, 613 F. Supp. 800, 821 (S.D.N.Y. 1985), the prosecution must also produce "information that,

4

even though not exculpatory, could still serve either to counter the government's case… or to bolster a defendant's arguments." *See United States v. El-Hanafi*, No. S5 10 CR 162 (KMW), 2012 WL 603649, at *4 (S.D.N.Y. Feb. 24, 2012); *see also United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) ("[t]o be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*.").

## ARGUMENT

### I.  The Milbank Documents are Material to the Defense.

Although the Government does not dispute that the Milbank Documents are material, Defendants believe a brief explanation of why these documents are important will assist the Court. In short, the Milbank Documents are material because they relate directly to, and may refute, several of the Government's allegations against the Defendants. This places the Milbank Documents comfortably within the Second Circuit's definition of "material" evidence as that which "could be used to counter the government's case or to bolster a defense." *Stevens*, 985 F.2d at 1180; s*ee also Stein*, 488 F. Supp. 2d at 356-57 (evidence is material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.")

The materiality of the Milbank Documents is borne out by the selective nature of the Government's disclosure in this case. The Government has already produced a June 20, 2013 white paper submitted to it by Milbank (the "June 20 White Paper"). (Ex. 7.) The June 20 White Paper argues that communications that occurred between September 19, 2005 and November 30, 2010 among Rabobank's Japanese Yen LIBOR setters and Rabobank's Yen-based derivatives traders were not motivated by an improper purpose. (*Id.*; *see also* Ex. 4 at 2.) Before reaching this conclusion, the June 20 White Paper compares every LIBOR-related request made by a Yen derivatives trader to that individual's trading book, and concludes that approximately

5

"90%" of the requests were not motivated "by a desire to increase profit or loss" and thus, could not be considered unlawful. (Ex. 7 at 3.) The June 20 White Paper directly refutes certain of the allegations contained in the Superseding Indictment, including that "Rabobank traders...asked Rabobank LIBOR setters to make USD and Yen LIBOR submissions that favored the traders' derivative positions" and that "Rabobank LIBOR submitters accommodated these requests by making USD and Yen LIBOR submissions that were intended to benefit Rabobank's traders." (Superseding Ind. ¶ 29(b), June 25, 2015, ECF No. 62.)

There is no dispute that the June 20 White Paper is the type of Rule 16 material that the Government is obligated to produce. However, the Milbank Documents appear to contain analysis similar to that found in the June 20 White Paper but the Government is nevertheless refusing to produce them. For example, among the withheld Milbank Documents are two August 7, 2013 presentations regarding "whether or not the net trading positions of the relevant traders" were dependent on the "tenor[s]"[3] referenced in their requests to submitters. (Ex. 4 at 2.) The Government is also withholding an August 8, 2013 letter from Milbank which further argues that certain trader requests for specific LIBOR rates could not have been motivated by a trader's financial interest because Milbank's "fixing analysis" of the relevant trading books demonstrated that the derivatives traders in question did not stand to gain from the LIBOR rates that were suggested to the LIBOR setter. (*Id.* at 3.) Like the June 20 White Paper, the information in these withheld documents would refute the Government's contention that "Rabobank traders...asked Rabobank LIBOR setters to make USD and Yen LIBOR submissions that favored the traders' derivative positions" and that "Rabobank LIBOR submitters

---

[3] A "tenor" is a borrowing period, such as 3 months or 1 year. LIBOR submissions were made in each currency for fifteen tenors, ranging from one week to one year.

accommodated these requests by making USD and Yen LIBOR submissions that were intended to benefit Rabobank's traders." (Superseding Ind. ¶ 29(b).)

Accordingly, the Milbank Documents constitute precisely the type of material evidence that the Second Circuit has mandated must be produced under Rule 16's broad disclosure provisions. *See Stevens*, 985 F.2d. at 1180 (evidence "is material if it could be used to counter the government's case or to bolster a defense."); *El-Hanafi*, 2012 WL 603649, at *4 (the prosecution must produce "information that. . .could still serve either to counter the government's case… or to bolster a defendant's arguments.").

## II. The Government Has No Legitimate Basis for Withholding the Milbank Documents.

Defendants first asked the Government to support its argument regarding the Milbank Documents on March 26, 2015. To date, the only authority put forward by the Government is *United States v. Reddy*, 190 F. Supp. 2d 558 (S.D.N.Y. 2002). The Government claims that *Reddy* supports the proposition that Rule 16 does not require the production of "settlement communications." (Ex. 6.) *Reddy*, however, is easily distinguishable from the case at bar. In *Reddy*, the defendants were charged with mail and wire fraud in connection with a scheme to defraud Electronic Data Systems, Inc. ("EDS"). *Reddy*, 190 F. Supp. 2d at 561-565. The defendants in *Reddy* moved to compel the prosecution to produce certain documents, including EDS investigatory files, which the defendants claimed provided the basis for the criminal charges against them. *Id.* at 572. The court in *Reddy* denied the defendants' request, not because—as the Government would have it—the files were "settlement communications" but rather, because the defendants had "not indicate[d] how the opinions, conclusions and analysis of the investigators meet the materiality standard… in other words, how such materials could help

the Defendants to counter the Government's case [or] bolster their defense . . . ." *Reddy*, 190 F. Supp. 2d at 573.

In the present case, however, the Defendants have clearly demonstrated that the Milbank Documents would bolster their defense. The withheld Milbank Documents appear to directly refute the Government's allegation in the Superseding Indictment that Messrs. Allen and Conti conspired to benefit Rabobank derivatives traders by accommodating requests from those traders for favorable LIBOR submissions. *Supra* at Point I. Thus, *Reddy* does not provide a legitimate basis for the Government's refusal to produce the Milbank Documents.

Although the Defendants have repeatedly asked, the Government has pointed to no authority beyond *Reddy* that would allow it to withhold material evidence on the basis that the evidence relates to settlement communications. As defense counsel explained to the Government almost four months ago, settlement communications may, in certain circumstances, be inadmissible at trial, but that is not a basis for withholding such evidence during discovery. *See* Fed. R. Evid. 408 (compromise negotiations are "not admissible to prove or disprove the validity or amount of a disputed claim" but the court may "admit this evidence for another purpose"); *see also* Fed. R. Evid. 410 ("a statement made during a plea discussion" may not be admitted "against the defendant who made the plea or participated in the plea discussions.").

Moreover, the Government has already produced—as Rule 16 material no less—a white paper authored by Milbank that relates to the same subjects as the documents it now claims cannot be produced because they are settlement communications. Even if the Milbank Documents were protected by some sort of settlement privilege—which they are not—the Government's production of the June 20 White Paper has waived that privilege. *See Alpex Computer Corp. v. Nintendo Co.*, No. 86 CIV. 1749, 1994 WL 330381, *2 (S.D.N.Y. July 11,

8

1994) (holding "[t]he subject matter waiver doctrine is based on considerations of fairness, which 'aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information.'") (quoting *In re von Bulow,* 828 F.2d 94, 101 (2d Cir. 1987). The Government should not be permitted to selectively produce only those white papers and settlement communications that it deems harmless to its case, while simultaneously invoking a (non-existent) settlement privilege to justify its refusal to produce documents that are helpful and material to Defendants.

## CONCLUSION

Accordingly, this Court should compel the Government to produce the Milbank Documents.

Dated:   New York, New York
         July 24, 2015

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter

Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
Phone: (212) 728-8000

*Attorneys for Defendant Anthony Allen*

**TOR EKELAND, P.C.**

By: /s/ Tor Ekeland
(electronic signature w/permission)
Tor Ekeland
Aaron Williamson
195 Plymouth Street, 5th Floor
Brooklyn, New York 11201-1133
Phone: (718) 737-7264

*Attorneys for Defendant Anthony Conti*