UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | S4:14-cr-00272-JSR |
| | : | |
| ANTHONY ALLEN, et al | : | |
| | : | |
| Defendants. | : | |

**<u>GOVERNMENT'S PROPOSED SUPPLEMENTAL INSTRUCTIONS</u>**

ANDREW WEISSMANN
Chief, Fraud Section
CAROL SIPPERLY
Senior Litigation Counsel
BRIAN R. YOUNG
Assistant Chief
U.S. Department of Justice
Criminal Division
1400 New York Ave., NW
Washington, D.C. 20005
(202) 616-3114

JEFFREY D. MARTINO
Chief, New York Office
MICHAEL T. KOENIG
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street, N.W.
Washington, D.C., 20001
(202) 616-2165

GOOD FAITH

(Adapted from *L. Sand et al.* Modern Federal Jury Instructions – Crm. Instr. 8.01)

Good faith is a complete defense to the charges in this case.  A statement made with good faith belief in its accuracy does not amount to a false statement and is not a crime.  This is so even if the statement is, in fact, erroneous.  If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime.  The burden of establishing lack of good faith and criminal intent rests upon the government.  A defendant is under no burden to prove his or her good faith; rather the prosecution – that is, the government – must prove bad faith or knowledge of falsity beyond a reasonable doubt.

There is another consideration to bear in mind in deciding whether or not the defendant you are considering acted in good faith.  If that defendant agreed to participate in the scheme to defraud, then a belief by that defendant, if such belief existed, that Rabobank's counterparties to swap contracts had "hedged" their LIBOR positions and therefore did not stand to lose money as a result of movements in the LIBOR benchmark does not require a finding by you that the defendant acted in good faith.  Nor does a belief by that defendant, if such belief existed, that Rabobank's LIBOR submissions were unlikely to affect the overall LIBOR rate require a finding by you that the defendant acted in good faith.  If the defendant you are considering participated in a scheme for the purpose of causing some financial or property loss to another, no amount of that defendant's honest belief that the scheme would eventually cause no loss will excuse fraudulent acts or false or fraudulent representations by that defendant.[1]

---

[1] *See United States v. Ingram*, 490 Fed. App'x. 363, 366 n.1 (2d Cir. 2012) (affirming delivery of an instruction charging that a belief that "no ultimate harm" would result from the scheme does not establish good faith); *See also United States v. Ferguson*, 676 F.3d 260, 820 (2d Cir. 2011) (same).

PROPOSED ADDITION TO GOVERNMENT'S PROPOSED INSTRUCTION NO. 10

Wire Fraud (Counts 2-19)

The government respectfully requests that the following sentences be added to its tenth proposed instruction (wire fraud):

Under the wire fraud statute, the definition of "property" includes intangible property interests such as the right to control the use of one's own assets.[2] A person acts with an intent to defraud if he or she withholds information that a counterparty would take into account in deciding whether or how to enter into an interest rate swap agreement, even if the person withholding the information does not intend to cause actual harm to his counterparty.[3] Because the immediate harm in this scenario is the denial of the counterparty's right to control his or her own assets through the denial of important information, it does not matter whether the information withheld would have been harmful or beneficial to the counterparty.[4]

---

[2] *See United States v. Carlo*, 507 F.3d 799, 801-02 (2d Cir. 2007); *United States v. Dinome*, 86 F.3d 282-85 (2d Cir. 1999).

[3] *See* Testimony of Timothy Smith (Tr. Oct. 21 at 499-500 (testimony concerning importance of the integrity of counterparties)); Testimony of Tracy Twomey (Tr. Oct. 23 at 827-828) ("that would have been relevant information . . . if the interest rate could have been manipulated higher or lower, then we wouldn't have wanted to be involved in it")); Testimony of Michael DiTore (Tr. Oct. 23 at 837-38 ("given that someone had more information than I did . . . I think would put me at a disadvantage . . . I would be less inclined to trade with someone who had more information than me")); Testimony of Paul Robson (Tr. Oct. 20 at 414) "[I did not tell my counterparties] because they would have been aggrieved about it. . . .")).

[4] *See United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011) ("it may well have been proven beneficial to AIG's stockholders, but the immediate harm in such a scenario is the denial of an investor's right to 'control her assets by depriving her of information. . . .'").

REVISED INSTRUCTION NO. 11

Affecting a Financial Institution

For the substantive wire fraud counts (Counts 2 – 19), but not the conspiracy count (Count 1), the government must prove that the scheme or artifice to defraud "affected" a "financial institution."[5] However, the government does not need to prove that the particular interstate wire charged in any given substantive count "affected" a "financial institution." Rather, the government must prove beyond a reasonable doubt that a "financial institution" was "affected" during the execution of some part of the scheme as a whole, which the indictment alleges existed between 2006 and 2011. An institution that is insured by the Federal Deposit Insurance Corporation (FDIC) is a "financial institution." Although the indictment identifies two particular financial institutions that were "affected," you are free to conclude, if you choose to do so, that the scheme "affected" any entity that was insured by the FDIC. To establish that a scheme "affected" a financial institution, the Government need not prove that the "financial institution" in question suffered actual harm, although actual harm would be sufficient. Rather, the Government must prove beyond a reasonable doubt that the "financial institution" was exposed to an increased risk of loss due to the scheme to defraud.[6]

---

[5] *See* 18 U.S.C. § 3729(2).

[6] *See United States v. Heinz*, 790 F.3d 365, 367-68 (2d Cir. 2015); *United States v. Countrywide Financial Corp.*, 996 F.Supp. 2d 247, 248-49 (S.D.N.Y. 2014); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F.Supp. 779, 783 (S.D.N.Y. 2011); *United States v. Mullins*, 613 F.3d 1273, 1278-79 (10th Cir. 2010); *United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003); *cf. United States v. Reese*, 603 Fed. App'x 63, 64 (2d Cir. 2015) (citing *Loughrin v. United States*, 134 S. Cit. 2384, 2388 (2014)) (the bank fraud statute does not require proof that the financial institution in question suffered an actual harm).

| | |
|---|---|
| ANDREW WEISSMANN<br>Chief, Fraud Section<br><br>/s Brian R. Young<br>CAROL SIPPERLY<br>Senior Litigation Counsel<br>BRIAN R. YOUNG<br>Assistant Chief<br>U.S. Department of Justice<br>Criminal Division<br>1400 New York Ave., NW<br>Washington, D.C. 20005<br>(202) 616-3114<br><br>Dated: October 25, 2015 | JEFFREY D. MARTINO<br>Chief, New York Office<br><br>/s Michael T. Koenig<br>MICHAEL T. KOENIG<br>Trial Attorney<br>U.S. Department of Justice<br>Antitrust Division<br>450 5th Street, N.W.<br>Washington, D.C., 20001<br>(202) 616-2165 |